## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LE COMMODITIES, LLC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| UNITED STATES; GINA M. RAIMONDO, IN HER : | Court No.    23-00220 |
| OFFICIAL CAPACITY AS UNITED STATES : | |
| SECRETARY OF COMMERCE; UNITED STATES : | |
| DEPARTMENT OF COMMERCE; TROY A. MILLER, : | |
| IN HIS OFFICIAL CAPACITY AS U.S. : | |
| CUSTOMS & BORDER PROTECTION ACTING : | |
| COMMISSIONER; U.S. CUSTOMS & BORDER : | |
| PROTECTION; : | |
| : | |
| Defendants. : | |
| : | |

## COMPLAINT

Plaintiff LE Commodities, LLC, by and through its counsel, brings this action and alleges as follows.

## SUMMARY

1.     In March 2018, the President of the United States of America ("the President"), acting pursuant to Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), imposed a 25% *ad valorem* tariff on steel imports. The President's Proclamation recognized that these tariffs could have unintended consequences for U.S. businesses that rely on imports of steel products not otherwise immediately available in the domestic market. Proclamation 9705, *Adjusting Imports of Steel into the United States* (Mar. 8, 2018). The Proclamation therefore expressly directed the Department of Commerce (hereafter "Commerce") to grant exclusions from the Section 232 tariffs to U.S.-based businesses for imported steel products that are not immediately available in sufficient quality or quantity in the United States.

2.      According to Commerce, the reason for exclusions was:

> [T]o protect downstream manufacturers that rely on products not produced by U.S. domestic industry at this time. The guiding principle is that, if U.S. domestic industry does not or will not produce a given steel or aluminum product of the quality needed by users in the United States, companies that rely on those products will not pay duties on them.

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,038–39 (Sept. 11, 2018).

3.      LE Commodities is a California-based provider of stainless, tool and high speed steel semi-finished products, including alloy type 416 stainless steel round bar conforming to ASTM A582 Standard, and ASTM A484 Standard (the "subject steel").

4.      LE Commodities depends upon a reliable, timely and continuous supply of the subject steel round bar in order to meet the requirements of its customers, each of which relies on the supply of the product in order to fulfill orders.

5.      LE Commodities has consistently sought to source the subject steel from the domestic market; however, domestic producers either do not produce the subject steel or cannot provide the subject steel to ASTM standards A582 and A484 Standard specifications within the timeframe required by LE Commodities' customers.

6.      This case concerns exclusion request no. 343536, which was submitted by plaintiff and subsequently denied by Commerce. The exclusion was filed on December 30, 2022. The exclusion request covered cold-rolled (or "cold-drawn") stainless steel round bar

conforming to ASTM standards A582 and A484 of alloy type 416. The product is hereafter referred to as "the subject steel."

7.    Commerce, after receiving a domestic objection from Electralloy, a G.O. Carlson Inc. Co. ("Electralloy ") and from North American Stainless ("NAS"), denied exclusion request no. 343536 despite: (1) substantial evidence documenting the lack of a sufficient and reasonably available amount or satisfactory quality of the subject steel in the domestic market, (2) Electralloy's inability to produce an identical or substitute steel product to the subject steel, (3) Electralloy's and NAS's clear statements that they would not be able to provide the subject steel within eight weeks or the time required for LE Commodities' foreign suppliers; and (4) Electralloy's and NAS' failure to provide any support or supplemental evidence for their respective claimed delivery times, as required by subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705. The decision memo was dated March 26, 2023. As a result of the denial of the exclusion request, LE Commodities paid Section 232 steel tariffs from which it should have been exempt.

8.    In denying LE Commodities' exclusion request and sustaining the objections, Commerce ignored substantial evidence that Electralloy and NAS are both unable to produce the subject products in the required timeframe, including statements made by the objectors in the objections themselves; undertook no effort to verify the objectors' respective claims; failed to recognize the objections as insufficient under subsection (d)(4) of the Supplement No. 1 to 15 C.F.R. Part 705; and failed to provide a sufficiently reasoned basis for each of its decisions.

9.      Thus, Commerce abandoned the standards established by Proclamation 9705 and the Department's own regulations. Commerce's denial of LE Commodities' exclusion request no. 343536 was therefore arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. ("APA").

10.     Commerce's denial of LE Commodities' exclusion request despite Commerce's failure to verify the objector's assertions, and despite objector's failure to comply with subsection (d)(4) of Supplement No. 1 to 15 C.F.R. Part 705, demonstrate that the Department ceded the entire exclusion process to the objectors, without giving any real consideration to the actual record evidence regarding LE Commodities' requests. Commerce's disregard of its obligation to engage in fair, reasoned decision-making mandates reversal.

## JURISDICTION

11.     This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1581(i)(1)(B).

12.     Section 1581 of Title 28 provides that "the U.S. Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . .tariffs, duties, fees, or other taxes on the importation of merchandize for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(1)(B), and "administration and enforcement with respect to the matters referred to in paragraphs (A)–(C) of this subsection and subsections (a)–(h) of this section." *Id*. § 1581(i)(1)(D).

13.    Section 232 is a law, "providing for tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," as well as for "administration and enforcement with respect to" such tariffs, duties and fees. Thus, this matter involves the administration and enforcement of matters referred to in 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

14.    Plaintiff imports the subject steel and supplies it to distributors in North America that, in turn, sell the steel bar for general-purpose applications in the manufacturing sector, including the manufacture of electrical motor components, nuts, and bolts. The distinctive features of the subject steel allow the steel to be heavily machined and used to produce parts requiring corrosion resistance.

15.    As the importer of record, Plaintiff was required to pay the 25 percent *ad valorem* tariff imposed by Proclamation 9705 on its imports of the subject steel into the United States.

16.    Defendant United States is the federal government to which Section 232 tariffs are paid and is the statutory defendant under 28 U.S.C. § 1581(i).

17.    Defendant Commerce is the agency responsible for reviewing and granting or denying Section 232 exclusion requests.

18.    Defendant Gina Raimondo currently holds the position of the Secretary of Commerce and is named in this Complaint in her official capacity as such.

5

19.     Defendant U.S. Customs and Border Protection is the agency that administers and enforces Section 232 tariffs, including the 25 percent *ad valorem* tariffs imposed on certain imports of steel under Proclamation 9705.

20.     Defendant Chris Magnus is the Commissioner of U.S. Customs and Border Protection.  In this capacity, he oversees CBP's collection of duties paid by Plaintiff under Proclamation 9705 and is named in this complaint in his official capacity.

## STANDING

21.     Plaintiff has standing to bring this action pursuant to 28 U.S.C. § 2631(i). That statutory subsection provides as follows: "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h), may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." Section 702 provides that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

22.     Plaintiff is the importer of record in the United States and paid and continues to pay Section 232 steel tariffs on the subject steel as a result of Commerce's wrongful denial of LE Commodities' request for exclusion from Section 232 steel tariffs.

23.     Plaintiff is therefore a "person . . . adversely affected or aggrieved" by Commerce's action pursuant to Proclamation 9705, within the meaning of 5 U.S.C. § 702, and

has suffered and continues to suffer concrete and particularized injury from Commerce's action under Proclamation 9705.

## TIMELINESS OF THIS ACTION

24.     Plaintiff contests action taken by Defendants that resulted in the denial of its request for exclusion from Section 232 steel tariffs. LE Commodities' claims accrued at the earliest on the date that Commerce first posted notice of its decision to deny the exclusion request, which occurred after March 26, 2023. The instant action was filed within two years of the date that Commerce first posted notice of its denial of LE Commodities' request for exclusion from Section 232 steel tariffs. This action is therefore timely because it is filed within two years after the cause of action first accrued. 28 U.S.C. § 2636(i).

## STATEMENT OF FACTS

**I.     Statutory and Regulatory Background**

25.     Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), authorizes the Secretary of Commerce, in coordination with the Secretary of Defense, to conduct an investigation "to determine the effects on the national security of imports" of any articles. Upon completing this investigation, the Secretary must provide the President with a report advising whether the articles under investigation are "being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. §§ 1862(b)(1)(A), (3)(A).

26.     If the President concurs with the Secretary's finding that a threat exists, the President shall "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A)(ii).

27.     Pursuant to Section 232, on March 8, 2018, President Trump issued Proclamation 9705, imposing additional duties on imports of steel. The Proclamation directed the Secretary of Commerce to grant exclusions from these tariffs if the Secretary determines that any steel product for which an exclusion is requested is not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." *Adjusting Imports of Steel into the United States*, Pres. Proc. No. 9705, 83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018).

28.     On March 19, 2018, Commerce, through its Bureau of Industry and Security ("BIS"), issued an interim final rule (codified at 15 C.F.R. pt. 705, supplement 1) setting forth the circumstances in which the Department would grant a tariff exclusion to directly affected U.S. businesses. Following a notice and comment period, on September 11, 2018, the Secretary supplemented the rules for tariff exclusion requests. *See Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 11, 2018). Commerce has subsequently amended the rule in June 2019, October 2020, and in December 2020. *Implementation of New Commerce Section 232 Exclusions Portal*, 84 Fed. Reg. 26,751 (June 10, 2019); *Procedures To Grant Relief From the Quantitative Limitation Applicable to Certain Steel Articles for Brazil for Parties With Preexisting Contracts That Meet Specified*

8

*Criteria*, 85 Fed. Reg. 64,377 (Oct. 13, 2020); *Section 232 Steel and Aluminum Tariff Exclusions*

*Process*, 85 Fed. Reg. 81,060 (Dec. 14, 2020).

      29.    The regulations adopted by Commerce set forth the procedures for affected

parties to request tariff exclusions. An exclusion will be granted if "any of the following three

criteria" are met: (1) "the article is not produced in the United States in a sufficient and

reasonably available amount," (2) "is not produced in the United States in a satisfactory quality,"

or (3) "for specific national security considerations." 15 C.F.R. pt. 705, supp.1 § (c)(6).

      30.    The regulations also provide that a domestic producer may object to any such

request if that producer is capable of "immediately" providing the imported product in the United

States in the quality and quantity required by the requestor. The Department's regulations specify

that a product is "not produced in the United States in a sufficient and reasonably available

amount" if:

> the amount that is needed by the end user requesting the exclusion
> is not available immediately in the United States to meet its
> specified business activities. Available "immediately" means that a
> product (whether it is currently being produced in the United
> States, or could be produced in the United States) can be delivered
> by a U.S. producer "within eight weeks", or, if that is not possible,
> by a date earlier than the time required for the requester to obtain
> the entire quantity of the product from the requester's foreign
> supplier.

15 C.F.R. pt. 705, supp. 1 § (c)(6)(i).

      31.    "A credible objection [to a request for exclusion from Section 232 tariffs] must

state that the objector can produce the product being sought." 83 Fed. Reg. 46,026, 46,035 (BIS

Response to Comment (f)(4)(i)). If the objector cannot provide an identical product, the request

must be granted, unless the objector can and will provide a sufficient and reasonable amount of a

"substitute product":

> "Substitute product" for purposes of this review criterion means
> that the steel . . . being produced by an objector can meet
> "immediately" . . . the quality (e.g., industry specs or internal
> company quality controls or standards), regulatory, or testing
> standards, in order for the U.S.-produced steel to be used in that
> business activity in the United States by that end user.

15  C.F.R. pt. 705, supp.1 § (c)(6)(ii).

32.    Commerce's regulations plainly and sensibly place the burden on an objector to

demonstrate that it can produce the identical product or a suitable "substitute product" within the

requisite timeframe. "It is incumbent upon both the exclusion requester, and objecting producers,

to provide supplemental evidence supporting their claimed delivery times." *Id*. at § (c)(6)(i).

33.    Objections to exclusion requests are provided for in Subsection (d)

of Supplement No. 1. Subsection (d)(4) provides as follows:

> The objection should clearly identify, *and provide support for*, its
> opposition to the proposed exclusion, with reference to the specific
> basis identified in, and the support provided for, the submitted
> exclusion request. If the objector is asserting that it is not currently
> producing the steel or aluminum identified in an exclusion request
> but can produce the steel or aluminum and make that steel or
> aluminum available "immediately" in accordance with the time
> required for the user of steel or aluminum in the United States to
> obtain the product from its foreign suppliers, the objector must
> identify how it will be able to produce and deliver the quantity of
> steel or aluminum needed either within eight weeks, or if after
> eight weeks, by a date which is earlier than the named foreign
> supplier would deliver the entire quantity of the requested product.

> *It is incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times.* This requirement includes specifying in writing to Department of Commerce as part of the objection, the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting. For example, a summary timeline that specifies the steps that will occur over the weeks needed to produce that steel or aluminum would be helpful to include, not only for the Department of Commerce review of the objection, but also for the requester of the exclusion and its determination whether to file a rebuttal to the objection.

*Id*. at § (d)(4) (emphasis added).

34.     Commerce has stated that objectors "should be held to the standards set forth in the regulations," which are "specified in paragraph[] (d) . . . of supplement no. 1 to part 705." *Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060 (interim final rule effective Dec. 14, 2020) (codified at 15 C.F.R. pt. 705) (BIS Response to Comment (d)(8)).

35.     Commerce regulations require Commerce to disregard objections that do not comply with subsection (d)(4) of supplement no. 1 to 15 C.F.R. Part 705.The regulations specify that "objection filings that do not satisfy the requirements specified in paragraphs (b) and (d) [of the regulations] will not be considered." 15 C.F.R. pt. 705, supp.1 § (h)(1)(ii).

## II.     LE Commodities' Request for Exclusion from the Section 232 Tariffs

36.     On December 30, 2022, LE Commodities submitted a request for exclusion from the Section 232 tariffs for the subject steel (exclusion no. 343536). LE Commodities' submission to the Department demonstrated that the subject steel was not sufficiently available in the United

States because no domestic producer could supply LE Commodities the subject steel within LE

Commodities' required timeframe.

37.     The exclusion request no. 343536 covered cold-rolled (or "cold-drawn") stainless

steel round bar conforming to ASTM standard A582 and ASTM standard A484 of alloy type

416. The request identified that the product is "cold-rolled" and covered stainless steel round bar

with outside diameter of 0.70 inch (18 mm) to 6 inch (152.40 mm), which are sizes that are cold-

rolled (or "cold-drawn").

38.     LE Commodities specified in exclusion request no. 343536 a total 90-day

estimation to take delivery of the product covered by the request from purchase order date, which

includes a 60-day estimation for manufacture from purchase order date and a 30-day estimation

for shipment from the foreign port of departure to LE Commodities' loading dock.

39.     After Commerce accepted LE Commodities' exclusion request, Electralloy, a

G.O. Carlson Inc. Co. ("Electralloy ") and North American Stainless ("NAS") each filed an

objection to the exclusion request. Electralloy and NAS each claimed without any support that

they could manufacture the subject steel in the quality and quantity LE Commodities needed

within the time provided for in subsection (c)(6)(i) to Supplement No. 1 to 15 C.F.R. part 705 –

within eight weeks or within the time required for LE Commodities to obtain the entire quantity

of the product from its' foreign supplier.

40.     Electralloy does not manufacture the subject steel. However, in its objection to

exclusion request no. 343536, Electralloy responded "Yes" to the question "Is the product type

identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" Accordingly, Electralloy asserted that it can produce and provide the exact steel bar that LE Commodities requires. Electralloy stated that "Electralloy stainless steel bar is completely identical, interchangeable and fungible with the requested product exemption request," that the subject steel "is a stainless steel bar product produced domestically by Electralloy which can fulfill the requirements" and "Electralloy can meet all the technical, cleanliness, surface finish, ultrasonic[sic] and physical requirements, in all heat treated conditions." Further, Electralloy claimed that it "can meet all chemistry, physical and technical specification requirements including ASTM E45, Method A, Plate 1-A.  Electralloy can meet all required chemistry, physical and specifications and delivery requirements including ferrite, internal defect requirements and NACE MR0175,  In[sic] all heat treated conditions."

41.     Electralloy's website, which identifies the products that Electralloy produces, does not reflect that the company produces stainless steel round bar in all of the sizes covered by the request. The website evidences that Electralloy only produces 3.75 inch to 24 inch diameter stainless steel round bars. However, the exclusion request covered cold-rolled stainless steel round bar with outside diameter of 0.70 inch (18 mm) to 6 inch (152.40 mm).

42.     Further, Electralloy directly advised LE Commodities in an email that it does not produce the subject steel. LE Commodities requested from Electralloy stainless steel **cold-drawn**

round bar in 0.50 inch to 5 inch diameter sizes. Electralloy responded that it does not produce cold-drawn round bar, confirming that it does not produce the product LE Commodities requires.

43.     Thus, Electralloy submitted apparently inaccurate information in its objection.

44.     In its objection, Electralloy asserted that it required 90 days to ship from receipt of purchase order, 87 days to manufacture the subject steel from receipt of purchase order, and 3 days to deliver from the time of shipment from Electralloy's facility to LE Commodities' loading dock.. Subsection (d)(4) of the Regulations requires that an objector asserting it can make the steel identified in the exclusion request available "immediately" identify "how it will be able to produce and deliver the quantity of steel or aluminum needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product." Subjections (d)(4) and (c)(6)(i) of the Regulations require that an objector provide support or supplemental evidence for its claimed delivery times. Objectors are required to be held to the standards set forth in the regulations and subsection (h)(1) of the Regulations require that Commerce disregard objections that do not comply with subsection (d)(4).

45.     Electralloy failed to provide any support or supplemental evidence, including purchase orders, invoices, and/or shipping documents, that it was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objections.

46.     Commerce's regulations plainly and sensibly place the burden on an objector to demonstrate that it can produce the identical product or a suitable "substitute product"1 within the requisite timeframe. "It is incumbent upon both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times." 15 C.F.R. pt. 705, supp. 1 §§ (c)(6)(i), (d)(4). Thus, Electralloy's objection was insufficient under the Regulations and should have been disregarded by Commerce.

47.     LE Commodities filed a rebuttal to Electralloy's objection in which LE Commodities provided information demonstrating that Electralloy cannot manufacture steel bar identical or equivalent to the subject steel that LE Commodities required. LE Commodities explained in the supplement to its rebuttal that, as stated above, Electralloy's website unequivocally states that the company produces stainless steel round bar only in sizes 3.75 inches and larger. Thus, Electralloy clearly does not produce a substantial portion of the products covered by ERID 34356. Moreover, Electralloy directly advised LE Commodities by email that it does not produce *any* cold-drawn round bar ("Electralloy will have to regret as we do not produce Cold Drawn Round Bar"), and Electralloy declined to supply LE Commodities with stainless-steel round bar in sizes 0.5 inches up to 5 inches. LE Commodities submitted these emails between itself and Electralloy to Commerce confidentially and they are part of the record. LE Commodities requested from Electralloy the exact steel covered by LE Commodities' exclusion request. LE Commodities' inquiry to Electralloy requested "stainless steel cold drawn round bar," "type: 416," "specifications: ASTM A484, ASTM A582" in 0.50 inch (12.7 mm) to

5 inch (127 mm) diameter sizes.  LE Commodities' exclusion request 34356 covers the stainless-steel bar in 0.70 inch (18 mm) to 6 inch (152.4 mm) diameter sizes and specifies that the items are "cold-rolled," which is synonymous with "cold-drawn." Accordingly, LE Commodities' request to Electralloy related to the same steel covered by request no. 343536, the only difference being the exclusion request also covered diameters from 5 inch up to 6 inch. Electralloy responded that it does not produce cold-drawn round bar, and it declined to fulfill the order for *any* of the sizes, thus confirming that it does not produce the sizes LE Commodities requires.

48.     LE Commodities also identified in its rebuttal that Electralloy explicitly stated in its objection that it would not be able to produce the subject steel and would not be able to deliver the requested quantity within eight (8) weeks or within the time required for LE Commodities to obtain the entire quantity from its foreign supplier.

49.     LE Commodities placed on the record documentation supporting its claimed delivery lead time of 90 days.  In an attachment to its rebuttal to Electralloy, LE Commodities provided a copy of LE Commodities' sales contract with its supplier in Taiwan, along with actual shipment documents substantiating the lead times that LE Commodities asserted in its exclusion request. The sales contract, dated October 23, 2022, shows the delivery terms for the subject steel round bar as "ex mil date Nov-Dec 2022." The bill of lading evidences the sale and shipment of the steel bar covered by the sales contract within 60 days from the date of the contract. The bill of lading, dated December 5, 2022, was issued 43 days after the date the sales

contract was issued. The documentation demonstrates that the Taiwan mill can and has actually manufactured the subject steel bar well within the 60-day estimation made by LE Commodities in its exclusion request.

50.     Electralloy filed a surrebuttal to LE Commodities' rebuttal. Electralloy again failed to provide Commerce *any* objective evidence of its actual ability to produce the subject steel in the sizes required, notwithstanding its own website indicating it did not produce the size ranges 0.7 inches up through 3.74 inches, and notwithstanding its prior written statements to LE Commodities that it could not produce any of the sizes requested (or any cold drawn bar). Electralloy also failed to provide any supporting documentation to support its claimed 90 day delivery lead times, even though it had an obligation to do so under subsections (c)(6)(i) and (d)(4) of the Regulations, which specify that it is "incumbent upon . . . objecting producers to provide supplemental evidence supporting their claimed delivery times."

51.     In its objection to exclusion request no. 343536, NAS responded "Yes" to the question "Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company-owned plant in the United States?" Accordingly, NAS indicated that it can "immediately" produce and provide the steel bar that LE Commodities requires.

52.     In its objection, NAS plainly admitted that it might not be able to provide the subject steel to LE Commodities within eight (8) weeks or within the time required for LE Commodities to obtain the entire quantity from its foreign supplier. NAS stated that it required

90 days to ship from receipt of purchase order, 90 days to manufacture from receipt of purchase order, and 2 days to deliver from the time of shipment from NAS' facility to LE Commodities' loading dock. Importantly, however, in the "comments" section NAS conceded that it "could potentially supply in 90 days depending on market conditions." Accordingly, NAS admitted that it is not capable of manufacturing and delivering the subject steel bar within the time that LE Commodities' foreign supplier requires to manufacture the subject steel because it claimed it can only *potentially* supply within this time frame.

53.     NAS failed to provide any support or supplemental evidence, including purchase orders, invoices, and/or shipping documents, that it was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objection. Thus, NAS' objection was insufficient under the Regulations and should have been disregarded by Commerce.

54.     LE Commodities filed a rebuttal to NAS' objection with a letter supplement in which LE Commodities identified that NAS admitted in its objection that it could only *potentially* produce and deliver the subject steel in the requested quantity within eight (8) weeks or within the time required for LE Commodities to obtain the entire quantity from its foreign supplier.

55.     LE Commodities submitted as an attachment to its rebuttal to NAS a copy of LE Commodities' sales contract with its supplier in Taiwan, along with actual shipment documents substantiating the lead times that LE Commodities asserted in its exclusion request. The sales

18

contract, dated October 23, 2022, shows the delivery terms for the subject steel round bar as "ex mil date Nov-Dec 2022." The bill of lading evidences the sale and shipment of the steel bar covered by the sales contract within 60 days from the date of the contract. The bill of lading, dated December 5, 2022, was issued 43 days after the date the sales contract was issued. The documentation demonstrates that the Taiwan mill can and has actually manufactured the subject steel bar well within the 60-day estimation made by LE Commodities in its exclusion request.

56.     NAS filed a surrebuttal to LE Commodities' rebuttal. In its surrebuttal, NAS did not address that, by its own admission, it could only *potentially* provide the steel within eight weeks or the time required by LE Commodities' foreign supplier and did not provide amended lead times to reflect that it could provide the subject steel "immediately." NAS simply stated "NAS produces this product domestically and needs to keep pricing up in the domestic market to remain financially stable. Granting an exclusion would provide the requestor an unfair advantage." NAS' surrebuttal did not establish "immediate" availability of the subject product in the United States. NAS failed to provide in its surrebuttal any support or supplemental evidence that it was capable of producing and delivering the requested quantities of the subject steel in the time frames asserted in its objection, as required under subsection (d)(4) of the Regulations.

57.     Because Electralloy does not produce the subject cold drawn round bar, and both Electralloy and NAS failed to support a contention that they can provide the subject steel within eight weeks or within the time required for LE Commodities to obtain the entire quantity of the product from its' foreign supplier, they failed to establish that they could provide the steel

"immediately" as that term is defined by Supplement No. 1 to 15 C.F.R. Part 705.  Therefore, the subject steel was not produced in the United States in a sufficient and reasonably available amount. Further, Commerce improperly accepted Electralloy and NAS's deficient objections because Electralloy and NAS both did not provide the information required under the Regulations for its objection to merit consideration.

**III.    Commerce's Denial of LE Commodities' Exclusion Requests**

58.    In its decision memo denying exclusion request no. 343536, Commerce stated that it was relying on the recommendations from another entity within the Department, the International Trade Administration ("ITA"). Although the recommendation memo issued by the ITA include sections purportedly addressing objector's claimed quality, quantity, and timeliness criteria, this memo does not include a complete analysis of the record before it.

59.    When Commerce issued its decision for exclusion no. 343536, Commerce simply accepted Electralloy's claim that it could produce and timely provide the subject steel in the quantities needed by LE Commodities. ITA responded "no" to the question "does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims [concerning quality]?" The ITA simply stated that "Electralloy can manufacture an identical product to the product in the request" and that "Electralloy's product matches the specifications of the request." Further, the ITA acknowledges that Electralloy failed to provide any support for its claim that it can manufacture a substitute product without assessing

Electralloy's actual ability to produce the substitute product: "Electralloy also claims it can manufacture a substitute product but does not provide additional information."

60.     Although the ITA memo reflects that LE Commodities provided a rebuttal attachment in which it challenged Electralloy's ability to meet the quality criterion, the ITA failed to assess the evidence provided in LE Commodities' rebuttal attachment from Electralloy's website demonstrating that Electralloy cannot manufacture steel bar identical or equivalent to the subject steel that LE Commodities required. LE Commodities explained in the supplement to its rebuttal that, as stated above, Electralloy's website reflect that the company produces stainless steel round bar in some of the sizes covered by the request. The ITA memo includes no discussion on this point raised by LE Commodities in its rebuttal, which directly contradicted Electralloy's assertions that it could produce the subject steel in the quality LE Commodities required.

61.     The ITA memo also notes that LE Commodities submitted information as Confidential Business Information ("CBI") to challenge Electralloy's ability to meet the quality criterion. As discussed above, LE Commodities confidentially submitted with its rebuttal emails between Electralloy and itself in which Electralloy directly advised LE Commodities that it does not produce the subject steel LE Commodities requires. The ITA memo reflects that the ITA relied on the purported findings of a "Subject Matter Expert" ("SME") as to whether the product described in the confidentially submitted emails matches the product described in LE Commodities' exclusion request. The memo reflects that the "SME found that the requested

product is not the product described in the rebuttal CBI document." As a result, ITA did not consider this pertinent evidence in evaluating Electralloy's ability to meet the quality criterion. As described above, the product that LE Commodities requested from Electralloy which is described in the confidential emails is the exact steel product covered by request no. 343536. LE Commodities requested "stainless steel cold drawn round bar," "type: 416," "specifications: ASTM A484, ASTM A582" in 0.50 inch (12.7 mm) to 5 inch (127 mm) diameter sizes. LE Commodities' request covers the stainless steel bar in 0.70 inch (18 mm) to 6 inch (152.4 mm) diameter sizes and specifies that the items are "cold-rolled," which is synonymous with "cold-drawn." Accordingly, LE Commodities' emailed request to Electralloy related to the subject steel covered by request no. 343536. Electralloy explicitly advised LE Commodities that it does not product cold-drawn round bar, thereby confirming that it does not produce the sizes LE Commodities requires. The CBI email therefore clearly demonstrates that Electralloy cannot provide steel bar that is identical or interchangeable with the steel in nearly all the sizes that LE Commodities requires. The SME incorrectly concluded that the product described in the confidential emails and the request did not match, and the ITA improperly disregarded this evidence, which directly contradicted Electralloy's assertions that it could produce the subject steel in the quality LE Commodities required.

62.     The ITA did not provide sufficient reasoning to support its recommendations and clearly misinterpreted and improperly disregarded the evidence provided by LE Commodities demonstrating that Electralloy could not meet the quality criterion.

63.     In addition to its blatant mistake in disregarding record evidence regarding Electralloy's inability to produce and provide the subject steel in the quality required, Commerce relied on a delivery time for LE Commodities' foreign manufacturer that ITA calculated in error. In its request, LE Commodities estimated the number of days to take delivery of the subject steel from the purchase order date (field 2.d). LE Commodities estimated 90 days in field 2.d. Necessarily included within this time frame is both the time (60 days) required to manufacture the subject steel from the execution of a binding purchase order (field 2.e), and the time (30 days) required to ship the product from the foreign port of departure to the requestor's loading dock (field 2.f). ITA explained that it calculated the requestor's total import delivery time by adding "2d + 2f of the exclusion request" (i.e., 90+30 days). Using this formula, ITA calculated LE Commodities' claimed import delivery times incorrectly, and wrongly concluded that LE Commodities claimed it requires a total of 120 days for import delivery time. Field 2.d in the exclusion request estimates the total delivery time from purchase order date to date of delivery. The total delivery time, as identified in field 2.d of the request (90), should be the sum of fields 2.e (60) and 2.f (30) in the exclusion.

64.     Commerce's acceptance of the miscalculation of LE Commodities' delivery time in the ITA recommendation memo reflects that Commerce did not give the evidence in the record careful consideration.  The ITA did not evaluate NAS' ability to meet the quality, quantity, and timeliness criteria. The ITA simply concluded "[b]ecause Electralloy meets the quality, quantity, and timeliness criteria, ITA has not evaluated NAS' ability to meet the [quality,

quantity, and timeliness criteria].” The ITA failed to consider NAS' admission that it may not be able to provide the subject steel in the quantities needed by LE Commodities within the time required under the Regulations.

65.     Accordingly, Commerce's acceptance of the ITA's recommendation evidence that Commerce disregarded NAS' explicit statement that it might not be able to "immediately" provide the subject steel in the quantities needed by LE Commodities within the required time frame. Thus, Commerce did not give the evidence in the record careful consideration and disregarded evidence on the record reflecting that U.S. producers may not be able to provide the subject steel in sufficient quantity and quality within the time frame LE Commodities requires.

66.     Commerce's decision is based on flawed reasoning and is in error. In adopting the ITA's recommended findings, Commerce blatantly disregarded the fact that Electralloy's website reflects that it does not produce the steel bar that LE Commodities requires, evidence establishing that Electralloy directly advised LE Commodities that it cannot produce the steel that LE Commodities requires, and NAS's explicit statements that it might not be able to "immediately" provide the subject steel in the quantities needed by LE Commodities within eight weeks or within the time required for LE Commodities to obtain the entire quantity from its foreign supplier. Electralloy and NAS did not have a basis upon which to object, and Commerce made a glaring error in accepting their unfounded objections.

67.     Electralloy and NAS both failed to provide in their objections or surrebuttals any support or supplemental evidence, such as purchase orders, invoices, and/or shipping documents,

that they were capable of producing and delivering the requested quantities of the subject steel in the time frames asserted, which is required under subsections (c)(6)(i) and (d)(4) of the Regulations.

68.     Commerce is required under subsection (h)(1)(ii) of the Regulations to disregard objections that do not satisfy the requirements specified in subsection (d)(4). Commerce therefore improperly accepted Electralloy's and NAS' deficient objections.

69.     Accordingly, Commerce's decision to deny exclusion request no. 343536 is based on flawed reasoning and is in error.

## STATEMENT OF CLAIMS

## COUNT 1: VIOLATIONS OF APA, 5 U.S.C. §§ 701-706

70.     Plaintiff incorporates by reference paragraphs 1-69 of this Complaint.

71.     LE Commodities submitted a request for exclusion from the Section 232 tariffs for stainless steel round bar (no. 343536). Commerce denied the exclusion request.

72.     Applying the standards set forth in Commerce's regulation (Supplement No. 1 to 15 C.F.R. pt. 705) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to this exclusion request was that LE Commodities cannot obtain the subject steel in the U.S. market in a sufficient quantity or quality, on a timely basis to replace the steel it currently imports. Electralloy directly advised LE Commodities that it could not produce the subject steel that LE Commodities required. NAS explicitly admitted that it might not be able to manufacture and deliver the subject steel within

eight weeks or the time required by LE Commodities' supplier. Electralloy and NAS' objections were without merit and deficient under the Regulations. Accordingly, LE Commodities was and remains entitled to the requested tariff exclusions.

73.     Commerce denied LE Commodities' request for exclusion from the Section 232 steel tariffs without an evidentiary basis and without any reasoned basis for doing so. Thus, Commerce's denial of LE Commodities' exclusion request was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The denial was rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *Id*. §§ 702, 706.

**COUNT 2: FIFTH AMENDMENT VIOLATIONS**

74.     Plaintiff incorporates by reference paragraphs 1-73 of this Complaint.

75.     The Fifth Amendment to the Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

76.     Plaintiff has a property interest in the customs duties paid on the imports of these stainless steel products. The Federal Circuit recognizes a property interest for Fifth Amendment due process purposes for importers facing a deprivation of their property by the federal government. *NEC Corp. v. United States*, 151 F.3d 1361, 1370-71 (Fed. Cir. 1998). The U.S. Supreme Court dictates that "(D)ue process is flexible and calls for such procedural protections

as the particular situation demands." *Mathews*, 424 U.S. at 323 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

77.     Applying the standards set forth in Commerce's regulation (Supplement No. 1 to 15 C.F.R. pt. 705) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to the exclusion request was that LE Commodities cannot obtain the subject steel in the U.S. market in a sufficient quantity or quality, on a timely basis to replace the steel it currently imports and that Electralloy and NAS' objections were without merit. Accordingly, LE Commodities was and remains entitled to the requested tariff exclusions and therefore is entitled to a refund of the 232 duties paid on its imports of stainless steel products for which it requested a tariff exclusion. Thus, Plaintiff's due process rights protected under the Fifth Amendment were violated when it was denied the requested tariff exclusion to which it is entitled.

## PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Plaintiff respectfully requests that this Court enter judgment as follows:

(1)     Declaring that Commerce's denial of LE Commodities' exclusion request no. 343536 was arbitrary and capricious or otherwise unlawful in violation of the APA (5 U.S.C. §§ 701 et seq.);

(2)     Declaring that Plaintiff is entitled to the requested exclusion from the Section 232 steel tariffs, in accordance with Proclamation 9705 and Supplement No. 1 to 15 C.F.R. Part 705;

(3)     Directing U.S. Customs and Border Protection to refund the Section 232 tariffs previously paid by LE Commodities on all entries for consumption of the subject steel products;

(4)     Alternatively, remanding the matter to Commerce for reconsideration, in accordance with the requirements of the APA;

(5)     Award Plaintiff costs and any reasonable attorneys' fees and expenses; and

(6)     Grant such additional relief as the Court may deem just and proper.

Respectfully Submitted,

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
Katherine A. Dobscha

599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4400

*Counsel for Plaintiff LE Commodities, LLC.*

Dated: October 16, 2023

28

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to USCIT R. 4(b) and (h), I hereby certify that on October 16, 2023, I caused copies of Plaintiffs' Summons and Complaint to be served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Director, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Chief Counsel Frederick B. Smith
Office of Chief Counsel
U.S. Customs & Border Protection
26 Federal Plaza
New York, NY 10278

Gina M. Raimondo
Secretary of Commerce
Office of the Secretary, U.S. Department of Commerce
1401 Constitution Ave., N.W.
Washington, D.C. 20230

Troy A. Miller
Acting Commissioner, U.S. Customs and Border Protection
1300 Pennsylvania Ave., N.W.
Washington, D.C. 20229

Robert Heilferty, Esq.
Office of General Counsel
Trade Enforcement and Compliance

29

U.S. Department of Commerce
14th Street & Pennsylvania Ave., NW
Washington, D.C. 2023

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
